Porter, J.
This action appears to have been commenced with a double object; to have Olcott declared a bankrupt, and to obtain the rescission of a sale of property made by him to Dow, on the ground that he was insane at the time he made the conveyance; and "inasmuch as it was without any good consideration in law, and fraudulent.”
I doubt very much, even under the equitable and liberal practice which our law authorises, if two such causes of action can be properly joined its the same petition. It seems to me, that it must necessarily introduce great confusion, to permit demands, founded on distinct causes, to be carried on against different defendants in the same suit; but I give no opinion on this point, because the defect, if it does *602 exist, is cured by the parties not objecting to it at the proper time.
Dow was cited to answer, this petition; Olcott, the other defendant, was not; the former appeared, and the action for a rescission of the sale proceeded against him; evidence was taken, and the parties heard. The court decided that the transfer of the property was null and void, and followed up this decree, by an order that a meeting of the creditors of Olcott take place before a notary. From this judgment Dow has appealed.
The record contains not only the evidence on which this decision was made, but also the subsequent proceedings had against Olcott, which terminated in ordering a forced surrender of his property. The greatest doubt I have had in this case is, whether we were not authorised to notice the fact of this insolvency; but on reflection, I am satisfied that as it did not make a part of the evidence, on which the court pronounced judgment below we cannot notice it on the appeal.
The first point made by the appellees is, that there is sufficient proof that Olcott was insane at the time he executed the bill of sale to the defendant.
*603 The evidence on this head is in substance as follows:—
Goodale, the first witness, declares that Dow told him Olcott appeared to be deranged.
Masson deposes, that Olcott was not of quiet mind, and deranged; and his reason for thinking so was, that Olcott called for paper and ink, and wrote and tore about eight or ten pages, and asked a lad of 13 or 14 years of age, if a certain account he had drawn was correct.
Pellé states, that he met Olcott in the street in the month of March, that he was “extravagating,” offering to give his store to the deponent, and requesting him to stop at a tavern and drink with him, which he did; that he had occasion to see him five or six days after, and he was in the same situation of mind.
Lee declares, that he had lent Olcott some money, that he applied a few days after for it, and thought Olcott was somewhat deranged; he made enquiry of the clerk, who answered it was nothing but liquor; he mentioned the same thing to Dow, who made the same answer; that some days after the deponent applied at the store for payment of a *604 note he held for a negro boy; he was informed it could not be paid. A week afterwards he made an arrangement, and took back the boy. Olcott appeared of sound mind when this transaction took place, though he drank too much.
Hewes swears, that Dow told him in the beginning of March, that his impression was, that said Olcott was a little deranged, and unable to attend to his business. And that in a subsequent conversation, he told the deponent that Olcott was subject to intoxication.
Devereux, the clerk, states, that Olcott is a man of sound mind since he has known him; that he is given sometimes to drinking, that he and Olcott slept in the same room, and that he has seen him drunk at the rate of three times a week.
This last witness is contradicted by one Madame V. Evan, who appears to stand in a situation, in relation to one of the plaintiffs, not very favourable to her credibility.
I agree with the parish judge, that this evidence is not sufficient to establish the insanity of the vendor. The fact must be notorious, and it must be clearly proved. Code 80, art. 15. *605 But all I can gather from the testimony is, that he was a drunkard, and that like other men, when in that situation, he talked and acted very foolishly.
The appellees next insist, that the sale was without consideration, and void against creditors.
Had it appeared in evidence, that Olcott was insolvent, or had been declared a bankrupt, a very strong case on the part of the plaintiffs would have been made out; but nothing of this kind is shewn, and of course, none of the provisions of the law which relate to sales made, or preferences given to favourite creditors, on the eve of bankruptcy or insolvency, can apply here; as that bankruptcy and insolvency have not yet been established according to law.
If then the plaintiffs can succeed, they must do so in consequence of rights which the law confers on them, independent of these circumstances of failure or insolvency. One of the rules prescribed for the exercise of those rights is, that to set aside the alienation, three things must be proved; fraud on the part of the vendor; knowledge of that fraud by the person to whom the alienation *606 was made; and an actual injury to the other creditors. Curia, Phillippica, Commercio terrestre, lib. 2, cap. 13, n. 16, 17. The evidence does not establish these facts, and the case of the plaintiffs is not made out.
We have been referred to the decision of this court, in Brown vs. Kenner & al. 3 Martin, 270, but in that case as well as Meeker's assig. vs. Williamson & others syndics, 4 Martin, 625, the insolvency of the vendor had been established before suit was brought, and the opinions given there were predicated, on the ground, that the conveyances were made on the eve of bankruptcy, and with a view to it.
I am therefore of opinion, that the judgment of the parish court be reversed, and that judgment be given for the defendant, as in case of non-suit, with costs in both courts.